## CASE NO. 9:19-CV-80351-ROSENBERG

## IN THE UNITED STATES DISTICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### KK-PB FINANCIAL, LLC,
Appellant,

v.

### 160 ROYAL PALM, LLC,
Appellee.
_____

On Appeal from the United States Bankruptcy Court
for the Southern District of Florida
(Case No. 18-19441-EPK)
_____

## BRIEF FOR APPELLEE 160 ROYAL PALM, LLC

SHRAIBERG, LANDAU, & PAGE, P.A.
Philip J. Landau
Bernice C. Lee
Eric Pendergraft
2385 NW Executive Center Drive, #300
Boca Raton, Florida 33431
Telephone: 561-443-0800
9:Facsimile: 561-998-0047
Email: plandau@slp.law
Email: blee@slp.law
Email: ependergraft@slp.law

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 9:19-CV-80351-ROSENBERG

KK-PB Financial, LLC,

     Appellant,

     v.

160 Royal Palm, LLC,

     Appellee.

_____/

## **APPELLEE'S CORPORATE DISCLOSURE STATEMENT**

Appellee 160 Royal Palm, LLC, by and through its undersigned counsel and pursuant to Federal Rule of Bankruptcy Procedure 8012, hereby discloses that 160 Royal Palm, LLC is owned 100% by Palm House, LLC.  Palm House, LLC is a privately-held Florida limited liability company, and no publicly held corporation owns 10% or more of Palm House, LLC.

*/s/ Philip J. Landau*

**TABLE OF CONTENTS**                                          **Page(s)**

TABLE OF CITATIONS…………………………………………….…….…...…v

STATEMENT OF THE CASE………….…………………...….……………….…..1

STATEMENT OF FACTS…………………………..………………..…….3

   A. The Debtor, its Creditors and the Town Settlement…………………………3

   B. The Bankruptcy Court Estimates KK-PB's
     Claim at $0 for All Purposes ……………………………….…………4

   C. The Extensive Sale Process and
     Adequate Notice to All Parties in Interest………………………….…….5

   D. The Debtor Extensively Markets the
     Property During the Delays……………………………….………..…….8

   E. The LR Contract and Sale Hearing……………………………….…………9

SUMMARY OF ARGUMENT………………………………………………...14

STANDARD OF REVIEW…………………………………………………....15

ARGUMENT………………………………………………….…......16

    I.   KK-PB Lacks Standing to Pursue these Appeals…..………………….....16

    II.  The Bankruptcy Court Properly Concluded that
       KK-PB's Proposal was an Untimely Sale Objection
       and KK-PB Misstates the Bankruptcy Court's
       Ruling as to Standing …….…………………………………………….23

    III. KK-PB Fails to Establish that the Bankruptcy
       Court Abused its Discretion in Determining
       the Debtor Property Exercised its Reasonable
       Business Judgment by Modifying the Sale Procedures…….………..…….25

IV. KK-PB Failed to Establish that the Bankruptcy Court
Abused its Discretion when it Determined that the Debtor
Reasonably Exercised its Business Judgment by Limiting
Final Bids to LR and RREF……………………………………….29

V. KK-PB Failed to Show that the Bankruptcy Court
Abused its Discretion when it Determined that the Debtor
Exercised Reasonable Business Judgment by
Accepting LR's Offer as Highest and Best………………..………..32

CONCLUSION……………………………………………………...……35

CERTIFICATE OF COMPLIANCE…………………………………...……36

CERTIFICATE OF SERVICE……………………………………………36

## TABLE OF CITATIONS                    Page(s)

### CASES

*In re Acosta-Conniff*, 686 F. App'x 647 (11th Cir. 2017)……………………….……15

*In re Bakalis*, 220 B.R. 525 (Bankr. E.D.N.Y. 1998)………………….…….…………34

*In re Broadmoor Place Investments, L.P.*, 994 F.2d 744 (10th Cir. 1993)…….17-18

*In re Colony Hill Associates,* 111 F.3d 269, 273 (2nd Cir. 1997)………….17, 19 n.6

*Dick's Clothing & Sporting Goods, Inc. v. Phar-Mor, Inc.*,
212 B.R. 283, 289 (N.D. Ohio 1997)………………………………………..19 n.6

*In re Diplomat Construction, Inc.*, 481 B.R. 215 (Bankr. N.D. Ga. 2012)………...34

*In re Egidi*, 571 F.3d 1156 (11th Cir. 2009)………………………..………………20

*In re Ernie Haire Ford, Inc.*, 764 F.3d 1321 (11th Cir. 2014)…………....14, 16, 17

*In re Financial News Network Inc.*, 980 F.2d 165 (2nd Cir. 1992)………..………31

*In re Fiori*, 2013 WL 5429264 (E.D. Pa. 2013)……………………..………19 n.6

*In re Frantz*, 534 B.R. 378 (Bankr. D. Idaho 2015)………………………………25

*In re Gucci*, 126 F.3d 380 (2nd Cir. 1997)…………………………………20, 22

*In re Gulf States Steel, Inc. of Alabama*,
285 B.R. 497 (Bankr. N.D. Ala. 2002)………………………………….....34 n.18

*In re Gulf States Steel, Inc. of Alabama*,
285 B.R. 739 (Bankr. N.D. Ala. 2002)………………………………….…....18

*In re Hat*, 310 B.R. 752 (Bankr. E.D. Cal. 2004)………………………………19 n.6

*In re Innkeepers USA Trust*, 448 B.R. 131 (Bankr. S.D.N.Y. 2011)……………….25

*In re Kulakowski*, 735 F.3d 1296 (11th Cir. 2013)…………………….….15, 16

*In re Las Cruces Country Club, Inc.*,
585 B.R. 239 (Bankr. D.N.M. 2018)……………………………………………18

*In re LeBlanc Inc.*, 299 B.R. 546 (Bankr. N.D. Iowa 2003)………………………22

*In re Moran*, 566 F.3d 676 (6th Cir. 2009)…………..………………..…....18, 20, 21

*In re O'Brien Environmental Energy, Inc.*, 181 F.3d 527, 531 (3rd Cir. 1999)……18

*In re Philips*, 2013 WL 1899611 (M.D. Fla. 2013)………………………………….25

*In re Rodriguez*, 633 Fed. App'x 524 (11th Cir. 2015)…………………….…..…15

*Quanalyze Oil & Gas Corp.*, 250 B.R. 83 (Bankr. W.D. Tex. 2000)…………24 n.9

*Spitz v. Nitschke*, 528 B.R. 874 (E.D. Wisc. 2015)…………………….………….23

*In re Squire*, 282 F. App'x 413 (6th Cir. 2008)………………..…………..…18, 21

*In re Westwood Community Two Association, Inc.*,
293 F.3d 1332, 1335 (11th Cir. 2002)………………………………………….21 n.8

## STATUTES AND RULES

11 U.S.C. § 101(5)………………………………………………………….4 n.2

11 U.S.C. § 101(10)…………………………………………………….4 n.2, 24

11 U.S.C. § 363(b)……………………………………………………...……..3

11 U.S.C. § 363(m)…………………………………………...…....14, 19, 20

11 U.S.C. § 363(n)…………………………………………………….14, 19

11 U.S.C. § 501..……………………………………………..………………3

11 U.S.C. § 502..………………………………………………………………..3

11 U.S.C. § 502(a) .…………….…………………………………………….23

11 U.S.C. § 541.…....…………….…………………………………………..….3

11 U.S.C. § 1109(b).…....……………………………………………16, 21 n.8, 24


Fed. R. Bankr. P. 2002(a)(2)…………….…..…………………………..……..27

Fed. R. Bankr. P. 6004(f)(1)…………….…..……….….………………………..30

Fed. R. Bankr. P. 8015(g)…………….…..……………………...…………..36

## STATEMENT OF THE CASE

160 Royal Palm, LLC (the "Debtor") filed for bankruptcy in August of 2018. Its principal asset is a partially-constructed hotel/condominium located in Palm Beach, Florida (the "Property"). Appellant KK-PB Financial, LLC ("KK-PB") is a private company owned by Glenn Straub ("Straub"), who formerly owned a controlling interest in the Debtor. Prior to the Debtor's bankruptcy filing, Straub and KK-PB participated in a fraudulent transfer scheme by which KK-PB improperly obtained a multi-million dollar note from the Debtor secured by a mortgage on the Property. Following extensive litigation, the Bankruptcy Court set aside the note and mortgage, and likewise disallowed KK-PB's bankruptcy claim based thereon. KK-PB has separately appealed that decision.

Beginning in October of 2018, the Debtor undertook a sustained and extensive effort to market the Property to potential purchasers and prepare it for sale in order to fund a distribution to the Debtor's numerous *bona fide* creditors. As part of this effort, the Debtor reached a settlement with the Town of Palm Beach, clearing up various issues that both enhanced the marketability of the Property and reduced the Debtor's liability to the Town. After extensive marketing, the Debtor obtained a sale offer from a *bona fide* purchaser that was, in the Debtor's business judgment, the highest and best offer. At the hearing to approve the sale of the Property to this purchaser, KK-PB belatedly attempted to submit a competing proposal that the

Debtor rejected because it was not higher and better—far from it.  Contrary to KK-PB's arguments and suggestions, it has no absolute right to bid on the Property and certainly no right to determine for itself whether its proposal is the highest and best. That is the Debtor's decision to make in the exercise of its sound business judgment, subject to review by the Bankruptcy Court. The Bankruptcy Court determined that the Debtor properly exercised its business judgment.  KK-PB has failed to demonstrate the lower court abused its discretion in rendering its decision.

Rather than attempt to present a credible argument that the court below abused its discretion under the *actual* circumstances of this case, KK-PB attempts to cherry-pick the facts in an effort to yield the impression that it is somehow a *bona fide* arm's-length purchaser wrongfully excluded from the sales process.  In reality, as the Bankruptcy Court determined, KK-PB and its principle, Straub, attempted to bilk the Debtor and its creditors through their participation in a fraudulent transfer scheme; belatedly attempted to force their way into the bidding process after the process was effectively over; and then failed to submit the highest and best bid. Unsurprisingly, after undertaking extensive efforts to market and sell the Property, the Debtor elected to proceed with an actual *bona fide* purchaser who has complied in good faith with all relevant rules and procedures, and represents the best prospect for a meaningful recovery for the Debtor's creditors.  In pursuing these appeals, KK-PB is simply attempting to disrupt the Debtor's sale of the Property, causing delay

and harm to the Debtor and its creditors.  KK-PB's motive is transparent.  Because

KK-PB has no meritorious argument that the court below abused its discretion in

approving the sale, its objective is simply to achieve delay in order to create leverage

over the Debtor.

## STATEMENT OF FACTS

### A. The Debtor, its Creditors and the Town Settlement

The Debtor commenced its chapter 11 bankruptcy case on August 2, 2018 (the

"Case").  As noted, its primary asset is the Property.  By operation of law, when a

debtor files for chapter 11 bankruptcy relief, a bankruptcy estate is created,

consisting of all of the debtor's property. *See* 11 U.S.C. § 541.  Thus, the Property

is now owned by the Debtor's estate.  In a chapter 11 case, the debtor typically

remains in possession and control of the estate and its property as the "debtor in

possession" for the duration of the bankruptcy case.  After the bankruptcy case is

commenced, creditors holding *bona fide* rights to payment from the debtor are

entitled to file proofs of claim against the estate seeking a share of the estate's value,

subject to allowance by the bankruptcy court.  *See* 11 U.S.C. §§ 501 and 502.  The

debtor may sell property of the estate to provide a source of payment to creditors,

subject to bankruptcy court's approval.  *See* 11 U.S.C. § 363(b).  In this case, the

Debtor's creditors include: (a) 76 foreign nationals who each provided over

$500,000 in a fraudulent EB-5 visa program involving the Property (the "EB-5

Investors"); and (b) the Town of Palm Beach (the "Town") who asserts a $4,141,000 secured claim comprised of Use Agreement damages and code violation fines accruing at $2,250 per day (the "Town Claim") since Straub owned the Debtor. *See* Claims Reg. [DA319][1]; Town Claim, [DA292].[2] These amounts continue to accrue and have priority over the claims of the Debtor's general unsecured creditors. *See* Sale Hr'g Tr. 73:6-76:11 [A0578-81].

The Debtor negotiated a settlement with the Town (the "Town Settlement") that provides substantial benefits to the Debtor's bankruptcy estate and any purchaser of the Property deemed a qualified buyer, including resolution of the Town Claim for $250,000 and an extension of development approvals through April 30, 2019, provided that a qualified buyer purchases the Property and undertakes certain actions by that date. *See* Town Stlmt. Mots. and Orders [DA003, DA043, DA150, DA206]. Notably, KK-PB, its affiliates, and Straub would not be qualified buyers, thereby scuttling the Town Settlement if they were to purchase the Property. *See* Sale Hr'g Tr. 35:18-36:2 [A0540-41]; Proc. Hr'g Tr. 31:11-31:22 [A0716].

**B. The Bankruptcy Court Estimates KK-PB's Claim at $0 for All Purposes**

KK-PB filed Claim No. 70-3 that asserted a $39,684,844.73 secured claim

---

[1] This brief references documents contained in KK-PB's Appendix as [A###], and documents located only in the Debtor's Appendix as [DA###].

[2] The EB-5 Investors are creditors. *See* 11 U.S.C. §§ 101(5) and (10) (a creditor is the holder of a claim, whether or not such claim is disputed). While KK-PB has objected to the EB-5 Investors' claims, such objections have not been adjudicated.

(the "Mortgage Claim") based on a note and mortgage issued by the Debtor in favor of KK-PB.  *See* Estm. Order 6 [DA251].  The Debtor and dozens of the EB-5 Investors (the "EB-5 Creditors"), on one side, and KK-PB, on the other, litigated an evidentiary hearing on January 8 and 11, and February 15 and 19, 2019 on the Debtor's motion to limit credit bid rights, KK-PB's motion to estimate its own claim, and KK-PB's motion for stay relief or dismissal (the "Contested Matters").  On February 26, 2019, the Bankruptcy Court entered an order estimating the Mortgage Claim at $0 and determining that it is not secured by a lien because, in part, KK-PB actually provided no value to the Debtor on account of the note and mortgage, and the note and mortgage would be avoided as fraudulent transfers under sections 726.105 and 726.106 of the Florida Statutes.  *See* Estm. Order 11-15 [DA261-65].

## C. The Extensive Sale Process and Adequate Notice to All Parties in Interest

On October 1, 2018, the Debtor began the bankruptcy sale process for the Property when it filed a motion to approve sale procedures with a $32 million stalking horse contract with RREF II Palm House LLC ("RREF"). *See* Mot. [A0071].  A "stalking horse" is a bidder willing to make a firm offer for property, subject to higher and better bids.  In this case, RREF's bid of $32 million was the relevant stalking horse bid.  The Bankruptcy Court approved the Debtor's motion and entered a procedures order on October 16, 2018, setting a bid deadline of November 9th, and scheduling an auction and sale hearing on November 16, 2018.

*See* Order [A0203].   A public auction would occur *only* if a qualified bidder submitted a timely bid for at least $32.5 million. *See* Order ¶¶ 6(i), 6(iii) [A0218-19].   Prior to an auction, the Debtor had no duty to disclose bidders. *Id.* at ¶ 6(i) [A0217].

This sale process was interrupted by the Contested Matters litigation, and a failed attempt to approve a settlement, with KK-PB.  Because the Contested Matters were set for evidentiary hearing on December 6, 2018, the Debtor requested, and the Bankruptcy Court approved a revised order with a bid deadline of December 7th, and auction/sale hearing on December 14, 2018. *See* Order, ECF No. 273 [A0216]. Due to extensive pending discovery, the Debtor sought to reschedule the evidentiary hearing and to further delay the sale.  On December 14, 2018, the Bankruptcy Court entered an order moving the bid deadline to January 21, 2019, and the auction/sale hearing to January 28, 2019. *See* Order, ECF No. 389 [A0231].  It also entered orders addressing procedures for, and rescheduling of, the Contested Matters evidentiary hearing. *See* Orders, ECF Nos. 480, 511 [DA043, DA048].

Two days into that evidentiary hearing, the Debtor and KK-PB announced a settlement proposing a ***private sale*** of the Property to KK-PB and third-party releases ("KK-PB Settlement").  KK-PB Stlmt. Mot. 1, ECF No. 523 [DA051].  As a result, the Bankruptcy Court entered orders continuing the evidentiary hearing, and moving the bid deadline to January 31, 2019 and the auction/sale hearing to February 5,

2019. *See* Order, ECF No. 520 [A0235].  Because approval of the KK-PB Settlement was pending, the Debtor requested, and the Bankruptcy Court entered, an order moving the bid deadline to March 4, 2019, and the auction/sale hearing to March 8, 2019. *See* Resch. Order [A0237].  The Debtor served this Order on all interested parties on February 6, 2018, ***30 days prior*** to March 8, 2019.  *See* Cert. of Service, ECF No. 540 [DA178].

During the February 8, 2019 hearing on the KK-PB Settlement, the EB-5 Creditors, other EB-5 Investors, the Securities and Exchange Commission, and the United States Trustee objected to the KK-PB Settlement, *see* Objs. and Resp., ECF Nos. 534, 535, 542, 544, 545, 555 [DA130, DA138, DA189, DA208, DA224, DA236], and the Bankruptcy Court denied approval. *See* Order, ECF No. 560 [DA250].  There were additional issues that the Bankruptcy Court *later* became of aware when Cary Glickstein ("Glickstein"), the Debtor's current manager and former court appointed receiver, testified that as of the February 8, 2019 hearing, KK-PB failed to deliver the required $5,125,000 payment under the KK-PB Settlement, and was in default. *See* Sale Hr'g Tr. 85:5-85:18 [A0590], 87:18-88:6 [A0592-93], 93:17-93:19 [A0598]; APA, Ex. B to KK-PB Stlmt. Mot. ¶ 5 [DA085].

The parties returned to the evidentiary hearing, and after closing arguments on February 22, 2019, the Bankruptcy Court made extensive findings and conclusions, and estimated the Mortgage Claim at $0, and determined that it was not

secured by a lien (because KK-PB provided no value to the Debtor on account of the note and mortgage), and the note and mortgage would be avoided as fraudulent transfers. *See* Est. Order 11-15 [DA261-65].

## D. The Debtor Extensively Markets the Property During the Delays

Since October 1, 2018, the Debtor has extensively marketed the Property, and otherwise preserved and enhanced its value for the benefit of the Debtor's *bona fide* creditors. In September of 2018, the Debtor hired Cushman & Wakefield U.S., Inc. as its real estate broker (the "Broker"). *See* Order, ECF No. 66 [DA001]. Glickstein testified during the Sale Hearing (defined below) that: (a) the property offering was broadcast through targeted emails to approximately 29,000 investors in the Broker's national and international data bases; (b) approximately 4,800 investors viewed the offering; (c) approximately 335 investors executed confidentiality agreements; (d) approximately 40 individual tours were conducted, most of which he attended to gauge interest and ascertain qualifications; and (e) all the foregoing efforts resulted in two *bona fide* potential purchasers, RREF and LR U.S. Hotels Holdings, LLC ("LR"), who expressed serious and sustained interest in the Property and were considered qualified by the Broker and the Debtor. *See* Sale Hr'g Tr. 98:17-99:3 [A0603-04]. During this period, the Debtor also negotiated extensions of the Town Settlement to permit bidders and the bankruptcy estate to take advantage of its terms, and obtained extensions of the RREF contract. *See* Mot. [DA150].

### E.  The LR Contract and Sale Hearing

The Debtor negotiated a sale contract with LR dated February 26, 2019 ("LR Contract"), which is substantially more favorable than the RREF contract, and provides for a purchase price of $39.6 million and the assumption of the following obligations: (a) reimbursement of $250,000 that the Debtor paid to the Town to maintain the Town Settlement; (b) unpaid *ad valorem* taxes; (c) brokerage commissions up to $450,000; and (d) any governmental recording/transfer fees associated with the sale. *See* Sale Mot., ECF No. 604 [A0242].

On February 26, 2019, the Debtor filed a motion to approve the sale of the Property and related assets to LR (the "Sale Motion").  *See id*.  After a hearing on February 28, 2019 (the "Procedures Hearing"), the Sale Motion was granted in part initially by the order entered on March 1, 2019 (the "Procedures Order"), which approved revised procedures (the "Revised Sale Procedures") for the sale of the Property, and reserved, for further hearing on March 8, 2019 (the "Sale Hearing"), any objections to sale under applicable law, and the potential approval of a sale to the winning bidder under such revised procedures. *See* Pro. Order [A0340].

The Procedures Order further provided that LR was deemed a qualified buyer under the Town Settlement, and the LR Contract would be subject to an overbid by RREF and then a subsequent overbid by LR.  *See id*.  RREF declined to submit an overbid, and the Debtor moved forward with seeking approval of the sale to LR.

During the Sale Hearing, the Bankruptcy Court heard evidence, made detailed findings and conclusions, approved the sale to LR, and overruled the objections raised by KK-PB.  On March 12, 2019, the Bankruptcy Court entered an order granting the Sale Motion, and included its detailed findings and conclusions as an exhibit thereto (the "Sale Order").  *See* Sale Order, ECF No. 651 [A0395].

None of the parties who objected to the KK-PB Settlement objected to the Sale Motion.  KK-PB was the only party that timely filed a written objection (the "KK-PB Objection") to the Sale Motion, which was filed solely on behalf of KK-PB Financial, LLC and which only references the Mortgage Claim that was previously disallowed.[3]  *See* KK-PB Obj. [A0346].  It raised three contentions: (a) the sale process was substantively and procedurally defective, (b) the sale proceeds should be held by the Debtor subject to further order, and (c) the settlement with the Town was substantively and procedurally defective. *See id*.

As the Sale Hearing began, KK-PB interrupted the presentation and advised that KK-PB, through its affiliate, Kids2, LLC ("Kids2"), should be permitted to present an offer to purchase the Property. *See* Sale Hr'g Tr.7:12-9:2 [A0512-14].  Up

---

[3] KK-PB, by virtue of an assignment from New Haven Contracting South, Inc. ("New Haven"), holds a $3,387,855.55 secured claim (the "New Haven Claim").  New Haven's principal testified at the Sale Hearing that he is a felon guilty of conspiracy to commit wire fraud and improper monetary transactions.  Sale Hr'g Tr, 46:1-46:21 [A0551].  KK-PB acquired the New Haven Claim for $30,000. *Id.* at 40:17-40:21 [A0545].

until that time, KK-PB had not discussed any such proposed offer.  Nor was the

proposed offer raised in the KK-PB Objection.  No proposed sale contract of any

kind was provided, and even during the Sale Hearing, the terms of the proposed offer

were in flux. Addressing this, the Bankruptcy Court stated in its ruling:

> Today, more than two days after the objection deadline, with no prior
> notice to the Debtor or the Court, literally during the sale hearing, KK-
> PB attempts to present its own offer to purchase the [Property]. KK-
> PB proposes a cash purchase price of $40.6 million, plus the assumed
> liabilities identified in the contract attached to the Debtor's sale motion,
> plus an additional $5 million dollars to cover the [Town] claim . . . but
> only to the extent that claim is allowed after an opportunity for
> objections.  The reason for the extra $5 million is that KK-PB is not a
> qualified buyer under the settlement with the [Town], so that settlement
> would fail and the estate would not have the benefit of the significant
> settlement of those claims. Note that the [Town] today suggests that if
> the settlement is not consummated, the Town likely will have other
> claims against the estate and those may include administrative expense
> claims that would come ahead of unsecured creditors. Thus, even
> assuming the basic terms of KK-PB's last minute proposal, it may not
> in fact represent the $1 million increase in value to the estate that it
> presents on its face. But let us assume for a moment that the KK-PB
> proposal represents a $1 million potential benefit to the estate. KK-PB's
> proposal includes as a required component that there be an auction
> procedure, set out about 30 days from now, at which other parties would
> also be permitted to bid. So the KK-PB proposal made today includes
> an initial topping offer, but would require a delay of at least a month
> for an additional auction procedure.
>
> . . . [T]he proposal of KK-PB was made orally during the hearing and
> was somewhat in flux as counsel for KK-PB presented the proposal.
> There was no written proposal offered. It is impossible to overstate how
> unusual this last minute proposal is in the context of a sale of this
> particular asset. Does it sometimes happen that bidders show up at a
> bankruptcy sale hearing to present a last minute bid? Yes, it does. Does
> it happen in cases such as this where the asset is of significant value
> and the due diligence required to present a reasoned bid typically

> requires extensive review of data and discussion with the debtor? In my
> 28 years experience with bankruptcy sales, it does not.

Sale Order 5 of Ex. A [A0413].

The Debtor and the EB-5 Creditors opposed KK-PB's proposal. The Debtor

concluded in its reasonable business judgment that the proposal did not represent a

more favorable offer than the LR Contract.  Glickstein[4] testified:

> a.    That the alleged $1 million price increase was not worth the risk that
> Straub would take action that would greatly increase the costs to the estate,
> thereby reducing creditor recovery, Sale Hr'g Tr. 88:11-88:22 [A0593];
>
> b.    To specific experience to support his view that the potential increase
> in recovery was far outweighed by the risk of additional litigation,
> including Straub's statements that he is a professional litigator who enjoys
> litigating, has the time to do it and takes pleasure in it, and the fact that
> KK-PB failed to deliver the $5,125,000 payment required under the KK-
> PB Settlement, *id.* at 88:2-88:22 [A0593], 93:5-93:19 [A0598];
>
> c.    To LR's strength as the Property purchaser, *id.* at 88:16-88:20
> [A0593], 92:8-92:21 [A0597], 94:18-95:5 [A0599-600];
>
> d.    That a sale delay would jeopardize both the Town Settlement and the
> LR Contract, *id.* at 84:14-85:14 [A0589-90], 86:1-86:14 [A0591]; and
>
> e.     That the Debtor had nearly run out of funds and that a sale delay
> would require it to obtain debtor in possession financing, which was highly
> unlikely due to extensive problems associated with the Property. *Id.* at
> 88:25-89:2 [A0593-94].

---

[4] While Glickstein has not previously served as a bankruptcy trustee or debtor in
possession, he is a transaction/real estate attorney, former corporate executive, real
estate developer, and the former two-term mayor of Delray Beach, Florida. *See* Aff.
of C. Glickstein ¶ 4 [DA287].  Glickstein's testimony at the Sale Hearing was found
by the Bankruptcy Court to be credible and "uniquely unbiased" because he "is a
professional manager, a neutral party, who was appointed by a Florida state court to
manage the debtor."  Bankr. Stay Denial Order 15-16 [A0490-91].

Additional factors were presented during the Sale Hearing to support the Debtor's decision that KK-PB's proposed offer was not a more favorable offer than the LR Contract:

> f.    The Town stated that if its settlement is not consummated, it will have administrative claims for the daily fines that accrue post-petition and will likely have other claims against the estate for failure to move forward with the development, *see* Sale Hr'g Tr. 73:6-76:11 [A0578-81], and KK-PB's proposal on behalf of Kids2 did not take this into account; *see id.* at 78:18-79:23 [A0583-84];

> g.    The EB-5 Creditors, who hold an overwhelming majority of the unsecured claims and are the parties who would benefit from any increased sale proceeds to the estate, opposed KK-PB's proposed offer and supported the LR Contract, *see id.* at 34:22-35:8 [A0539-40];

> h.    No evidence was presented to show Kids2 could close on the sale;[5] and

> i.    No evidence was presented to support the suggestion that there would be any new bidders at an auction.

The Bankruptcy Court concluded that:

> The KK-PB proposal is an untimely objection to the sale. The Court set an objection deadline.  KK-PB filed an objection. This proposal was not included in the written objection.  KK-PB's proposal is due to be overruled for this reason alone.  But, even if KK-PB's proposal does not amount to an untimely objection, the Debtor has exercised its reasonable business judgment in not pursuing KK-PB's proposal.

Sale Order 5-6 of Ex. A [A0413-14].

---

[5] The photocopy of the $50 million cashier's check, *payable to Straub*, did not establish *Kids2's* (or KK-PB's) ability to close. *See* [A0749]. It only showed that Straub *could* make cash available to Kids2 (or KK-PB).  Straub did not agree on the record that he would make the cash available to Kids2 or KK-PB.

## SUMMARY OF ARGUMENT

Under the aggrieved person doctrine as applied by the Eleventh Circuit in *In re Ernie Haire Ford, Inc.*, KK-PB lacks standing to appeal the Sale Order and the Procedures Order. 764 F.3d 1321, 1324–25 (11th Cir. 2014).  These orders do not directly, adversely, or pecuniarily affect KK-PB.  KK-PB is not a proposed bidder for the Debtor's assets, as it brought the proposal on behalf of its affiliate, Kids2, and even if either were considered a bidder, it would lack standing under the general rule that unsuccessful bidders are not persons aggrieved.  The limited exception for unsuccessful bidders who challenge the good faith of the purchaser under 11 U.S.C. § 363(m) or allege collusive conduct under 11 U.S.C. § 363(n) is inapplicable.

Even assuming *arguendo* that KK-PB is an aggrieved person and has standing (which it does not), KK-PB has failed to show that the Bankruptcy Court erred in reaching its decisions.   In particular, KK-PB has failed to establish that the Bankruptcy Court abused its discretion in determining that: (a) the Debtor properly exercised its business judgment when it modified the sale procedures due to delay caused by litigation with KK-PB and a failed attempt to approve a settlement agreement with KK-PB that contemplated a private sale of the Property to KK-PB; (b) notice of the Sale Hearing was adequate where parties in interest had notice of such hearing for 30 days and had notice of the proposed sale of the Debtor's assets since fall 2018; (c) the Debtor properly exercised its reasonable business judgment

by limiting final bids to LR and RREF who, after an extensive marketing efforts by the Debtor, where the only *bona fide* investors who expressed serious and sustained interest in the acquisition of the Property and who were considered qualified by the Debtor and its broker; and (d) the Debtor properly exercised its reasonable business judgment when deciding that LR's offer was the highest and best offer, and to not accept KK-PB's late, unvetted, unwritten, unclear and fluctuating proposal announced during the Sale Hearing.

This Court should therefore dismiss these appeals or affirm the Bankruptcy Court's Procedures Order, Sale Order and Stay Denial Order.

## STANDARD OF REVIEW

"On appeal from a bankruptcy-court order, a district court reviews findings of fact for clear error and conclusions of law *de novo*." *In re Acosta-Conniff*, 686 F. App'x 647, 649 (11th Cir. 2017) (citation omitted). A bankruptcy court's "factual finding is not clearly erroneous unless, after reviewing all of the evidence, [the appellate court] is left with the definite and firm conviction that a mistake has been committed." *In re Rodriguez*, 633 Fed. App'x 524, 525-26 (11th Cir. 2015). When a bankruptcy court's discretion is challenged, "we review only for abuse of discretion." *In re Kulakowski*, 735 F.3d 1296, 1299 (11th Cir. 2013) (citation omitted). The abuse of discretion standard of review is "highly deferential" and a "bankruptcy court abuses its discretion when it applies the wrong principle of law or

makes clearly erroneous findings of fact." *Id*. at 1301, 1299 (internal quotations omitted).

## ARGUMENT

### I.     KK-PB Lacks Standing to Pursue these Appeals

A threshold issue is whether KK-PB has standing to appeal the Sale Order and Procedures Order under applicable precedent Eleventh Circuit precedent.  This inquiry differs from whether KK-PB had standing to object to a proposed sale before a bankruptcy court under 11 U.S.C. § 1109(b), discussed below.  KK-PB improperly conflates the two issues and standards.

"Due to the nature of bankruptcy proceedings, which often involve numerous creditors who are dissatisfied with any compromise that jeopardizes the full payment of their outstanding claims against the bankrupt, special rules have been developed to govern which parties may appeal a bankruptcy court order." *In re Ernie Haire Ford, Inc.*, 764 F.3d at 1324–25 (internal quotations omitted).  In the Eleventh Circuit, the "person aggrieved doctrine limits the right to appeal a bankruptcy court order to those parties having a direct and substantial interest in the question being appealed." *Id*. at 1325 (internal quotations omitted).  This "doctrine defines aggrieved persons as those individuals who are directly, adversely, and pecuniarily affect[ed] by a bankruptcy court's order." *Id*.  "An order will directly, adversely, and pecuniarily affect a person if that order diminishes their property, increases their

burdens, or impairs their rights." *Id*.

The person aggrieved standard serves a vitally important purpose. As explained by the Eleventh Circuit:

> The person aggrieved standard was developed as an answer to the argument that the failure to limit who can appeal a bankruptcy court's order would cause bankruptcy litigation [to] become mired in endless appeals brought by the myriad of parties who are indirectly affected by every bankruptcy court order. Since the purpose of adopting this heightened standard was to ensure that the goals of bankruptcy were not derailed by a flood of appeals, it only makes sense to exclude appeals from those parties who do not suffer a direct harm to interests the Bankruptcy Code seeks to protect or regulate—that is, appeals that do not further the goals of bankruptcy. Allowing appeals from parties who have suffered only an indirect harm or who hold interests outside the scope of the Bankruptcy Code would defeat the very purpose underlying our person aggrieved standard.

*Id*. at 1326 (internal quotations omitted).

KK-PB fails to satisfy the aggrieved person standard because the Sale Order and the Procedures Order do not directly, adversely and pecuniarily affect KK-PB. Most notably, KK-PB is not a proposed bidder for the Debtor's assets, as it raised the proposal on behalf of its affiliate, Kids2, which is not a party here. Further, even if KK-PB or its affiliate Kids2 was considered to be a bidder for the Debtor's assets, KK-PB would still not have standing because unsuccessful bidders generally fall outside of the persons aggrieved standard. *See In re Colony Hill Assoc.*, 111 F.3d 269, 273 (2nd Cir. 1997) ("[A]n unsuccessful bidder . . . usually lacks standing to challenge a bankruptcy court's approval of a sale transaction."); *In re Broadmoor*

*Place Investments, L.P.*, 994 F.2d 744, 746 n.2 (10th Cir. 1993) ("G–K, absent some other meritorious ground for appeal, lacks standing to appeal, being merely an unsuccessful bidder and not an 'aggrieved person' as is required."); *In re Squire*, 282 F. App'x 413, 416 (6th Cir. 2008) ("PSC likewise lacked standing to appeal the bankruptcy court's orders" because "[f]rustrated bidders do not have standing to object to the sale of property"); *In re Moran*, 566 F.3d 676, 681 (6th Cir. 2009) ("Generally, frustrated bidders do not have standing to object to the sale of property."); *In re O'Brien Environmental Energy, Inc.*, 181 F.3d 527, 531 (3rd Cir. 1999) (concluding that "disappointed prospective purchasers" do not have appellate standing in the context of the sale); *In re Las Cruces Country Club, Inc*., 585 B.R. 239, 246 (Bankr. D.N.M. 2018) ("Generally, an entity that is a stranger to the bankruptcy case except for its interest in purchasing an estate asset lacks standing to object to a motion to sell."); *In re Gulf States Steel*, 285 B.R. 739, 742-43 (Bankr. N.D. Ala. 2002) ("A competing bidder normally lacks standing to even challenge a sale, much less seek reconsideration of an order approving sale.") (citation omitted).

These appeals are squarely the type of appeals that the person aggrieved standard was intended to prevent.  KK-PB is a prior owner of the Debtor who, through fraudulent transfers, obtained the Mortgage Claim which the Bankruptcy Court has disallowed in its entirety as set forth in the Estimation Order.  The Debtor has endeavored to sell the Property to provide a distribution to defrauded EB-5

investors and other creditors. To such end, the Debtor engaged in a thorough and extended sale process designed to encourage the strongest bids from willing and able good faith purchasers. The process was a success and resulted in the LR Contract at a price significantly higher than any prior offer. KK-PB has inserted itself into this carefully structured sale process, at the last minute, with a half-baked proposal that was not even reduced to writing. KK-PB will not suffer a direct harm to interests that the Bankruptcy Code seeks to protect or regulate, and its appeals are inconsistent with the goals of bankruptcy. Considering KK-PB to be an aggrieved person would only serve to discourage *bona fide* bidders from becoming involved in bankruptcy sales. It would also encourage those whose claims have been disallowed as fraudulent transfers to use late alleged proposals as a litigation tactic to delay the closing of a sale and distribution of proceeds to defrauded *bona fide* creditors.

While courts recognize an exception to the person aggrieved standard where an unsuccessful bidder challenges the good faith of the successful purchaser under 11 U.S.C. § 363(m) or alleges collusive conduct under 11 U.S.C. § 363(n),[6] KK-PB

---

[6] *See Colony Hill Assoc.*, 111 F.3d at 274 (holding party had standing to extent it argued purchaser was not good faith purchaser); *Dick's Cloth. & Sport. Goods, Inc. v. Phar-Mor, Inc.*, 212 B.R. 283, 289 (N.D. Ohio 1997) ("Dick's thus has standing . . . but only insofar as Dick's alleges that the sale was not made in good faith."); *In re Fiori*, 2013 WL 5429264, at *7 (E.D. Pa. 2013) ("Fiori may have standing . . . insofar as he challenges the Bankruptcy Court's" good faith purchaser finding); *see In re Hat*, 310 B.R. 752, 758 (Bankr. E.D. Cal. 2004) (determining party had standing to bring reconsideration motion based on alleged bidder collusion).

never raised any such arguments,[7] and KK-PB has waived such arguments under the Procedure Order and on appeal. *See In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("[I]n order to be resolved at the appellate level an issue must first be raised in the Bankruptcy Court.").

KK-PB's reliance on *In re Gucci*, 126 F.3d 380 (2nd Cir. 1997) and *In re Moran* 566 F.3d 676 (6th Cir. 2009) is misplaced. *See* KK-PB Br. 12. In *Gucci*, in addressing whether a challenge to a bankruptcy sale was moot under § 363(m), the appellate court concluded that an owner of assets had standing to appeal the sale to the extent it alleged that purchaser acted in bad faith. *In re Gucci*, 126 F.3d at 389. As discussed above, at no time did KK-PB object to the good faith conduct of LR with respect to § 363(m). In *Moran*, the appellate court stated in *dicta* that an "exception to this general rule may exist where an unsuccessful bidder challenges the intrinsic structure of the sale because it is tainted by fraud, mistake, or unfairness" but concluded that despite a frustrated bidder's objection alleging that the trustee fraudulently or unfairly decided not to sell the stock to him, he still does not qualify for the exception because his "bare interest as a potential purchaser is not protected by the Bankruptcy Code provisions that he relies upon." *In re Moran*, 566 F.3d at 681-82. *Moran* does not support KK-PB's position, and instead finds that

---

[7] KK-PB has never challenged the Bankruptcy Court's finding that LR and the Debtor acted in good faith in connection with the sale, that LR is a good faith purchaser, and that there was no collusion. *See* Sale Order ¶ 8 [A0403].

even a "part owner of a corporation, without more, does not have an interest sufficient to justify intervention in (and delay of) any proceeding in which a bankruptcy court administers other shares in the corporation." *Id*. at 681.

While KK-PB peppers its brief with inflammatory rhetorical phrases like 'abdication of fiduciary duty' and 'rubber-stamp', KK-PB's argument boils down to nothing more than its claim that the sale process was unfair because its proposal was rejected by the Debtor.  This argument does not fall within the exception, and leaves KK-PB without standing. *See In re Squire*, 282 Fed. App'x at 416 (noting that because party did not "allege or offer any evidence of intrinsic unfairness" and "merely objected to the bid process as a disappointed bidder seeking a new auction[,]" it "is thus not within the 'zone of interests' to be protected by the Bankruptcy Code and applicable law.").

Nor does KK-PB have standing on appeal as a creditor under the person aggrieved standard.[8]   KK-PB inaccurately refers to the Mortgage Claim as a "disputed" claim.  *See* KK-PB Br. 11.  The Mortgage Claim has been disallowed for all purposes under the Estimation Order due to fraudulent transfers.  KK-PB thus

---

[8] KK-PB's reference to statutory standing under section 1109(b) is misleading because that statute only applies to the rights of parties to be heard in bankruptcy court. *See* KK-PB Br. 11; *see In re Westwood Community Two Association, Inc*., 293 F.3d 1332, 1334 and 1337 (11th Cir. 2002) (noting that while Section 1109 is pertinent to determine who may object to claims before the bankruptcy court, "the proper inquiry to determine who may appeal a bankruptcy court order is the person aggrieved standard.").

has no right to payment.  Its claim is not simply disputed; it has been repudiated. The Bankruptcy Court correctly concluded that "KK-PB has neither a lien nor an allowed claim" on account of the Mortgage Claim.  Sale Order p.7 of Ex. A [A0415].

KK-PB's current status as a creditor is represented only by the New Haven Claim which KK-PB purchased under suspect circumstances, and which the Bankruptcy Court correctly found would be fully secured by a lien on sale proceeds. *See id.* at ¶11 [A0404].  Secured creditors and creditors who will otherwise be paid fully from the sale proceeds are ***not*** adversely and pecuniarily affected by a sale, and thus, do not hold aggrieved person standing to appeal an order approving a bankruptcy sale.  *See In re LeBlanc Inc.*, 299 B.R. 546, 551 (Bankr. N.D. Iowa 2003) (finding creditor had no pecuniary interest in outcome of sale motion because cash in estate was sufficient to pay any claim it might have); *In re Gucci*, 126 F.3d at 388 ("Creditors ordinarily have standing to appeal bankruptcy court orders that make a disposition of estate property since that sort of order directly affects the funds available to meet their claims."); *In re Gulf States Steel, Inc. of Alabama*, 285 B.R. at 743 (determining bondholders had no standing because of no possibility of receiving any sale proceeds and no pecuniary interest in outcome of sale.).  Because the New Haven Claim is presently a $3,387,855.55 secured claim that will be fully satisfied by the $39.6 million sale proceeds, KK-PB is not adversely and pecuniarily affected based on the New Haven Claim for the simple reason that, regardless of

who purchases the Property, the allowed amount will be paid in full either way. Thus, the outcome of this appeal can have no impact on any recovery on this claim.

Lastly, KK-PB's argument that it should be considered an aggrieved person because "the Debtor has indicated that it intends to object to KK-PB's New Haven Claim[,]" constitutes speculation of what *might* happen in the future and is insufficient to confer aggrieved person standing. *Spitz v. Nitschke*, 528 B.R. at 881 ("And, speculative harm is insufficient to confer standing."). *See* KK-PB Br. 13. The Debtor has not objected to the New Haven Claim and the Bankruptcy Court has not made any determinations as to any such objection to the New Haven Claim. Thus, such claim is presently an allowed secured claim. *See* 11 U.S.C. § 502(a) (A claim "is deemed allowed unless a party in interest, objects.").  In any event, any objection would be on the basis of issues that have nothing to do with this appeal. Again, the outcome of this appeal has no bearing on the treatment of the claim.

## II.   The Bankruptcy Court Properly Concluded that KK-PB's Proposal was an Untimely Sale Objection and KK-PB Misstates the Bankruptcy Court's Ruling as to Standing

The Bankruptcy Court properly determined that KK-PB's proposed offer was an untimely objection to the sale and was waived under the Procedures Order.  KK-PB has been aware of a proposed sale of the Property since October 2018, and failed to include any proposed offer in the KK-PB Objection.  KK-PB has failed to point to any error in the Bankruptcy Court's determination that KK-PB's oral proposal

was "an untimely objection to the sale . . . [and is] due to be overruled for this reason alone." Sale Order 5 of Ex. A [A0413].

The Bankruptcy Court properly addressed KK-PB's Mortgage Claim and recently acquired New Haven Claim for purposes of section 1109(b) standing to object to the proposed sale in the Case. Judge Kimball correctly determined that, as a result of its prior Estimation Order, the Mortgage Claim was disallowed for all purposes. *Id.* at 6-7 of Ex. A [A0414-15]; Est. Order 15, [DA265]. As a result, KK-PB is no longer a creditor under 11 U.S.C. § 101(10) on account of the disallowed Mortgage Claim.[9]  KK-PB cannot and has not pointed to any error in this determination. As to the New Haven Claim, the Bankruptcy Court concluded that "KK-PB does have standing under section 1109 as a result of the claim it acquired from New Haven" and "[t]his means only that KK-PB had the right to file a timely objection. Sale Order 7 of Ex. A [A0443]. Thus, KK-PB misstates the Bankruptcy Court's ruling when it states that "it was error to rule that KK-PB did not have standing to prosecute its Sale Objection." KK-PB Br. 13. As noted above, the

---

[9] Rather, as to the disallowed Mortgage Claim, at the time of the Sale Hearing and the Procedures Hearing, KK-PB was a stranger, and the Bankruptcy Court was correct to determine that, on account of the Mortgage Claim, KK-PB had no standing to object to the Sale. *See In re Quanalyze Oil & Gas Corp.*, 250 B.R. 83, 89 n.5 (Bankr. W.D. Tex. 2000 ("Strangers . . . bent on derailing the process in order to exploit an advantage . . . would love nothing better than the leverage that can come from litigation delay and expense, so barring such parties from being able to upset sales with frivolous pleadings designed to obtain such leverage is essential.").

standard for standing in the bankruptcy court, and the person aggrieved standard for purposes of appeal, are distinct.  Regardless of whether KK-PB had standing to object, it has no standing on appeal because the standards are distinct.

### III.   KK-PB Fails to Establish that the Bankruptcy Court Abused its Discretion in Determining the Debtor Properly Exercised its Reasonable Business Judgment by Modifying the Sale Procedures

A debtor in possession is entitled to exercise its business judgment in managing its sale process. *See In re Philips*, 2013 WL 1899611, at *10 (M.D. Fla. 2013) (determining trustee's procedure for bidding and sale "are ultimately a matter of discretion that depends upon the dynamics of the particular situation.");[10] *In re Frantz*, 534 B.R. 378, 387 (Bankr. D. Idaho 2015) ("trustee's selection of bidding and sale procedures" is subject to business judgment standard); *In re Innkeepers USA Trust*, 448 B.R. 131, 146 (Bankr. S.D.N.Y. 2011) (finding debtors "appropriately exercised their business judgment" to propose revised bidding procedures."). "The Bankruptcy Court evaluates whether the Trustee exercised sound and reasonable business judgment, but without substituting its own judgment for that of the Trustee."  *In re Philips*, 2013 WL 1899611, at *10.

The Bankruptcy Court properly concluded that, "in light of the circumstances of this case, the revised sale procedure in place now is an appropriate method for the

---

[10] A debtor in possession in a chapter 11 bankruptcy "has the same rights and duties as a trustee." *International Yacht and Tennis, Inc. v. Wasserman (In re International Yacht and Tennis, Inc.*, 922 F.2d 659, 661 (11th Cir. 1991).

Debtor to follow through on its extensive efforts to sell the hotel property for the best possible recovery and the ultimate benefit of the estate and valid creditors." Sale Order 5 of Ex. A [A0441].   KK-PB's argument that "the Bankruptcy Court was simply wrong to find that the Private Sale Procedures was a mere continuation of the withdrawn public bid process" ignores reality.   It is undeniable that the Revised Sale Procedures "are a continuation of a sale process started by the debtor on October 1, 2019[.]" Proc Hr'g Tr. 52:13-52:15 [A0737].   Judge Kimball accurately recounted how the Debtor obtained approval of its sale process in October 2018 and repeatedly continued the bid deadline, and auction and sale date, *id.* at 52:13-56:12 [A0737-41], and found that the Debtor had been actively marketing the Property during such period.  *Id.* at 57:12-57:14 [A0742].  Based on unrebutted representations in the Sale Motion, the Bankruptcy Court correctly found that after over four months of marketing, and after multiple extensions of the bid deadline and auction/sale date, RREF and LR were "the only bidders now interested in the hotel property at the present price levels." *See* Sale Mot. 7 [A0246]; Proc. Hr'g Tr. 59:6-59:8 [A0744].[11] As the Bankruptcy Court accurately found, the revised procedures were "an amendment to the existing auction procedure with" the two finalists each given an

---

[11] While KK-PB stated at the Procedures Hearing that it "*would* make a higher and better offer," it provided no details at the Procedures Hearing, and its last *written* offer was to purchase the Property for $5.2 million. *Id.* at 21:21-22:19 [A0706-07] (emphasis added), 24:11-24:25 [A0709]; KK-PB Stlmt. Mot. [DA051].

opportunity to present their final and best offers. *Id.* at 58:19-59:3 [A0743-44].  At the time of this ruling, Judge Kimball had presided over multiple hearings vis-à-vis the Debtor's sale process and thus his factual findings are entitled to great deference.

Reasonable and adequate notice of the Revised Sale Procedures was provided to parties in interest, including KK-PB, who have been aware of the Debtor's proposed sale of the Property since ***October 2018***, and knew, ***for thirty days***, that a sale of the Property was scheduled for final approval on March 8, 2018.  As correctly noted by Judge Kimball, "while the Court has shortened notice of the sale proposed in the sale motion currently before the Court, all parties in interest have had notice for a month that there would be a sale on this date of the Debtor's hotel and related assets.  Indeed, all parties in interest have had notice of a proposed sale of these assets since last fall." Sale Order 3 of Ex. A [A0411].

While Federal Rule of Bankruptcy Procedure 2002(a)(2) provides that bankruptcy sales have twenty-one days' notice, such notice can be, and is often, shortened "for cause shown[.]".  In its Motion to Shorten, the Debtor explained that the Town Settlement required expedited performance by the eventual qualified buyer and only LR had tendered a qualified bid exceeding RREF's offer.  Mot. ¶ 7 and 11 [DA268-69].  KK-PB failed to object to the Motion to Shorten,[12] and the Bankruptcy

---

[12] At the Procedures Hearing, KK-PB did not allege that shortened notice under the revised sale procedures would be inadequate.  Nor did it challenge the propriety of the notice under such procedures, or the Debtor's request to schedule March 8, 2019

Court found adequate cause to grant such motion and schedule a final hearing to consider the Sale Motion for March 8, 2019, the date already scheduled for the auction and sale hearing under the initial sale procedures. *See* Proc. Hr'g Tr. 62:10-62:18 [A0747]; Order, ECF No. 627 [A0344]. At the Sale Hearing, the Bankruptcy Court accepted unrebutted evidence regarding the Debtor's proper notice of the Sale Motion, and KK-PB does not and cannot dispute that all parties in interest had notice for a month that there would be a sale hearing on March 8, 2019. *See* Aff. of E. Pendergraft ¶ 10, [DA286].   KK-PB has failed to show that the Bankruptcy Court erred when it determined that notice was adequate.   Moreover, the KK-PB Settlement proposed a private sale of the Property to KK-PB with only 14-days' notice, and KK-PB should be estopped from arguing that the notice of the Sale Hearing was inadequate. *See* KK-PB Stlmt. Mot. [DA069]; Order [DA250].

Accordingly, this Court should find that KK-PB has failed to show that the Bankruptcy Court abused its discretion when it determined that the Debtor reasonably exercised its business judgment by modifying the sale procedures. The Debtor reasonably exercised its business judgment in taking the "bird in hand," and accepting, subject to a final-round overbid by RREF, LR's *vetted* $39.6 million offer, the cash portion of which was "$7.6 million or nearly 24% higher than the original

---

as the date for the Bankruptcy Court to consider final approval of the Sale Motion. KK-PB has therefore waived any argument that notice under the revised sale procedures is "grossly" or otherwise inadequate.

stalking horse bid." Proc. Hr'g Tr. 58:7-58:11 [A0743].[13]  LR's offer is nearly eight

times higher than the $5.25 million offered by KK-PB through a private sale under

the KK-PB Settlement. *Id*. at 24:13-25:2 [A0709-10].

### IV.   KK-PB Failed to Establish that the Bankruptcy Court Abused its Discretion when it Determined that the Debtor Reasonably Exercised its Business Judgment by Limiting Final Bids to LR and RREF

Contrary to KK-PB's contention, LR's offer did not come out of "left field"

ten days prior to the Sale Hearing.  KK-PB Brief 15.  Rather, Glickstein's unrebutted

testimony was that he had been negotiating with LR for weeks before the Debtor

filed the Sale Motion on February 26, 2019.  *See* Proc. Hr'g Tr. 7:14-7:23; Aff. of

C. Glickstein ¶ 14, [DA289].  The Debtor vetted LR and determined it had the ability

to close and would be (unlike KK-PB) a qualified buyer under the Town Settlement.

*See* Aff. of C. Glickstein ¶¶ 22 and 25 [DA290]; Sale Hr'g Tr. 95:1-95:5 [A0600].

In reality, KK-PB's late, unvetted, unwritten, unclear and fluctuating proposal

came out of "left field" when it was announced at the Sale Hearing without any prior

notice to, communication with, or negotiation with, the Debtor.  *See* Sale Hr'g Tr.

10:21-10:24  [A0515],  12:2-12:16  [A0517],  83:16-83:18  [A0588];  Aff.  of  C.

Glickstein ¶ 21 [DA290].  Judge Kimball's characterization of this proposal as being

---

[13] KK-PB's assertion that if the auction was not cancelled, there would have been "likely other potential bidders," is not supported by any evidence.  KK-PB Br. 15. KK-PB's conclusion that it had a *right* to submit a bid by the March 4th deadline is not supported by any law. *Id*.

made past the eleventh hour, at 12:01 a.m., is accurate.[14]  It is important to note that Judge Kimball personally witnessed the attempts of KK-PB's counsel to make disjointed and erratic proposals, and certainly was in the best position to judge issues of credibility. *See* Sale Hr'g 7:12-9:2 [A0512-14].

The bankruptcy rules do not mandate public auctions, and expressly contemplate private sales. Fed. R. Bankr. P. 6004(f)(1) ("All sales not in the ordinary course of business may be by *private sale* or by public auction.") (emphasis added).[15] LR's $39.6 million offer was significantly higher than RREF's $32 million offer, and was conditioned on, with the exception of an overbid by RREF, not "bidding at any type of public sale." Sale Hr'g Tr. 84:22-84:24 [A0589]; Sale Mot. ¶ 8.2, [A0272].  The Debtor, having received no other comparable offers, and consistent with its fiduciary duty to maximize value for the estate, accepted LR's $39.6 million offer and moved forward under the Revised Sale Procedures.

KK-PB's reliance on *In re Financial News Network Inc.* is misplaced.  In that case, the court did not immediately rule following an asset valuation evidentiary

---

[14] As noted, while KK-PB stated at the Procedures Hearing that it *would* make a higher and better offer, it did not actually do so at that hearing or otherwise offer any details regarding a cash bid at that hearing.  The Bankruptcy Court noted this lack of action by stating "[t]he procedure was approved last week, and nobody stood up on behalf of KK-PB and said we don't like this procedure because we're going to propose a cash bid, no communication between then and now, correct?  Just, this is it, let's lay it out at the sale hearing."  Sale Hr'g Tr. 12:22-13:2 [A0517-18].

[15] Indeed, when it served its interests, KK-PB proposed a private sale in its attempt to settle the Debtor and purchase the Property. *See* KK-PB Stlmt. Mot. 1 [DA051].

hearing, and bids were revised, including after bidding was officially closed.  The court determined that the "involved and somewhat speculative nature of the assets being sold required the bankruptcy court to adopt a fluid bidding process," which was the "process [that] best balanced the competing considerations of finality in the bidding process and fairness to the bidders against the interests of creditors in securing the highest sales price.  There are cases where the bankruptcy court's discretion must be sufficiently broad so that in making its decision it can compass these competing considerations as best it can. We think this is such a case." 980 F.2d 165, 170 (2nd Cir. 1992).  The circumstances present in *Financial News Network* are also not present here.  Here, the Debtor sought to sell a single parcel of semi-improved real estate, the value of which was not speculative, and, LR submitted the highest and best bid.  The Bankruptcy Court's ruling exhibits exactly the proper exercise of discretion described in the *Financial News Network* case.

For these reasons, the Bankruptcy Court did not abuse its discretion when it determined that the Debtor reasonably exercised its business judgment by limiting final bids to LR and RREF.  Moreover, through the KK-PB Settlement, KK-PB pursued a private sale (with no overbid rights) of the Property, and thus should be estopped from now arguing that the sale to LR is improper.

## V.     KK-PB Failed to Show that the Bankruptcy Court Abused its Discretion when it Determined that the Debtor Exercised Reasonable Business Judgment by Accepting LR's Offer as Highest and Best

The Bankruptcy Court had ample basis to determine that the Debtor reasonably exercised its business judgment by selecting the LR offer as the highest *and* best offer.  This Court accurately stated in its order denying a stay that the:

> Sale Order . . . goes to great lengths to document why the proposed sale represents the 'best possible recovery' for the bankruptcy estate, based on a lengthy history of delayed public sales, substantial negotiations with the Town of Palm Beach (a significant creditor in the bankruptcy action), consultation with the majority of creditors in the case, and a finding that the sale negotiations have been pursued in good faith.

Dist. Court Stay Order 4, Dist. ECF No. 13.

The Debtor, after months of extensive marketing and the receipt of *just one* offer from LR that was *bona fide* and *substantially* higher than RREF's $32 million offer, was perfectly justified in accepting LR's offer, which was conditioned on a private sale subject to specific overbids.  The "Right of First Refusal" and Anti-Solicitation" provisions merely provided that, in exchange for its *significantly* higher $39.6 million offer, LR could, if RREF chose to overbid, make a final and best offer. Such conduct demonstrates the Debtor acted in accordance with its fiduciary duty to maximize value for the benefit of the estate. [16]

The Debtor's decision to reject KK-PB's late, unvetted, unwritten, unclear

---

[16] KK-PB offers no support for its contention that, by lacking a "fiduciary out" clause, LR's contract was defective.

and fluctuating proposal is supported by substantial evidence, including the credible and unrebutted testimony of Glickstein, as discussed in detail *supra*, pages 7 and 12. Additional factors support the Debtor's decision, including the Town's additional claim, and the lack of evidence that Kids2 could close, as discussed in detail *supra*, page 13.   The Debtor's decision to not pursue KK-PB's proposal was not based on personal animus and does not demonstrate a lack of good faith.[17]  KK-PB initially only offered to *indemnify* the Debtor as to the claims of the Town resulting from a failure of the Town Settlement.  *See* Sale Hr'g Tr. 9:10-10:7 [A0514-15], 66:8-66:11 [A0571], 67:19-67-24 [A0572], 70:21-71:6 [A0575-76].   After being repeatedly challenged by the Bankruptcy Court with the fact that an offer to indemnify is not the same thing as cash, KK-PB offered to increase its cash offer as to *some*, but not all, potential claims from the Town.  *Id.* at 71:22-83:10 [A0576-88].  Thus, KK-PB has failed to show that the Bankruptcy Court clearly erred when it found that KK-PB's offer would not cover all claims resulting from a failure of the Town Settlement, and "may not in fact represent the $1 million increase in value to the estate that it presents on its face." Sale Order 5 of Ex. A [A0413].

Further, even assuming *arguendo* that the proposal provided increased value on its face, it is hornbook law that it was well within the Debtor's business judgment

---

[17] KK-PB's contention otherwise is unsupported.  KK-PB did not allege lack of good faith when the Debtor pursued a private sale of the Property to KK-PB.

to decline such an offer. *See In re Diplomat Construction, Inc.*, 481 B.R. 215, 219-20 (Bankr. N.D. Ga. 2012) ("Trustee articulated his business justification for declining the higher offer"); *In re Bakalis*, 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998) (approving trustee's decision to pursue bid "most advantageous to the estate" rather than "mechanistically recommending the facially higher bid" due to "greater risk of, among other things, a failed closing and the associated chance of being left with a devalued asset.").[18]  Here, the record is replete with support for the Debtor's decision to reject KK-PB's "offer," including the fact that the Debtor lacked confidence in KK-PB, a litigious recipient of fraudulent transfers who had previously reneged on its obligations under the KK-PB Settlement.

Finally, the Bankruptcy Court did not clearly err when it found that KK-PB's offer "would require a delay of at least a month for an additional auction procedure." KK-PB Br. 20.  At the Sale Hearing, KK-PB requested that an auction take place "within one month *of the execution of an asset purchase agreement*" by KK-PB. Sale Hr'g Tr. 10:11-10:13 [A05145] (emphasis added). Thus, Judge Kimball

---

[18] *Gulf States Steel, Inc. of Alabama*, cited by KK-PB, supports the Debtor's position that "[i]n deciding whether to approve a purchase offer or in choosing which is the better offer when competing offers have been made, courts generally consider factors in addition to a higher dollar amount." 285 B.R. 497, 517 (Bankr. N.D. Ala. 2002).  While it "is legally essential" to approve the highest offer, "this statement assumes that the offers and offerors are in all other respects comparable." *Id*.  Here, the offer and offerors are not in all other respect comparable.

exercised his common sense and well-reasoned judgment and properly found that, when accounting for the likelihood that an asset purchase agreement would take time to draft and execute, and the likelihood that a sale approval hearing and sale closing would not occur immediately following an auction, he did not err in finding that KK-PB's offer "would require a delay of at least a month for an additional auction procedure." KK-PB's argument to the contrary is both puzzling and disingenuous.

Accordingly, KK-PB has failed to establish that the Bankruptcy Court abused its discretion when it determined that the Debtor reasonably exercised its business judgment by accepting LR's offer as the highest and best offer. KK-PB's request for this Court to substitute its own judgment for the business judgment of the debtor in possession should be denied.

## CONCLUSION

For all the foregoing reasons the Debtor respectfully requests that the Court dismiss these appeals for lack of standing or affirm the Bankruptcy Court's Sale Order, Procedures Order, and Stay Denial Order.

Respectfully Submitted,

SHRAIBERG, LANDAU, & PAGE, P.A.
Attorneys for the Debtor
2385 NW Executive Center Drive, #300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047
plandau@slp.law
blee@slp.law
ependergraft@slp.law

By:  */s/ Philip J. Landau*
        Philip J. Landau
        Florida Bar No. 504017
        Bernice C. Lee
        Florida Bar No. 0073535
        Eric Pendergraft
        Florida Bar No. 91927

## CERTIFICATE OF COMPLIANCE

I certify that this brief, which contains 35 pages excluding the items specified in Federal Rule of Bankruptcy Procedure 8015(g), complies with the form and length requirements of Federal Rule of Bankruptcy Procedure 8015, as modified by the Court's Order at ECF No. 20.

*/s/ Philip J. Landau*

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2019, a copy of the foregoing document was served electronically through this Court's CM/ECF system on all registered counsel.

*/s/ Philip J. Landau*